PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PASSION CARE, LLC, | ) | |
| | ) | CASE NO. 4:26-cv-02007 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| ALLEN BENNETT, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF Nos. 2, 13, 14, 21, 31] |

Pending is Plaintiff Passion Care LLC's Motion for Preliminary Injunction (ECF No. 2); Defendant's Motion to Dismiss, Emergency Motion to Dissolve, Vacate or Modify Temporary Restraining Order, Motion for Status, and Motion for HIPPA Qualified Protective Order (ECF No. 13, ECF No. 14, ECF No. 21, ECF No. 31). The Court has been advised, having reviewed the record, the Parties' briefs, exhibits, and arguments. For the reasons set forth herein, the Court grants Plaintiff's motion (ECF No. 2). Defendant's motions are denied (ECF No. 13, ECF No. 14, ECF No. 21, ECF No. 31).

## I. Introduction

Plaintiff moves the Court for a preliminary injunction against Allen Bennett to maintain the *status quo* and, to that end, to receive: (1) four computers, including the computer that Defendant claims is his personal computer and (2) funds that Medicaid and CareSource intended for Plaintiff but deposited into Defendant's personal account; and to compel Defendant to (3)

provide an accounting of assets owned by Plaintiff, including patient portals[1] and any other patient, financial, or licensing systems in Defendant's possession or control; (4) provide any additional funds that Medicaid or CareSource disbursed or disburses to him that was intended for Plaintiff; and to prevent Defendant from (5) interfering with the operations or finances of Plaintiff, including, but not limited to, accessing or modifying banking and financial accounts, Medicaid and other patient portals, and any other financial, licensing, and patient systems associated with Plaintiff.[2] *See* ECF No. 2 at PageID #: 44 and ECF No. 4.

## I. Background[3]

Plaintiff is a Limited Liability Corporation ("LLC") whose members are all United States citizens who reside in New York. ECF No. 7. Defendant Allen Bennett resides in Warren, Ohio. ECF No. 13. The court has diversity jurisdiction.

The Verified Complaint alleges three state law claims against Defendant: (1) conversion, (2) tortious interference, and (3) accounting. ECF No. 1. Specifically, the Verified Complaint alleges that Defendant has dominion and control over assets that belong to Plaintiff, including at least $310,000[4] in Medicaid payments and four computers and their contents.[5] Along with the

---

[1] The portals include those permitting access to: (1) Medicaid; (2) Passport; (3) CareSource; and (4) Legacy.

[2] Requested relief was further established at the Preliminary Injunction hearings.

[3] The Parties did not file stipulations of uncontested facts as required by Court Order (ECF No. 12), Plaintiff's counsel, however, provided notice that the Parties were not able to stipulate to uncontested facts. ECF No. 18.

[4] During the TRO hearing, Plaintiff presented evidence of a greater amount, that is at least $364,944.54 (TRO Hrg. Pl. Ex. 3); and during the preliminary injunction hearing Plaintiff presented evidence of $445,962.96 from Medicaid and CareSource(Prelim. Inj. Hrg. Pl. Ex. 8).

[5] The contents include access to patient portals, Medicaid portals, and access to Plaintiff's two-factor authentication.

Verified Complaint, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 2 and ECF No. 4.

The Court Conducted a TRO hearing. *See* TRO Motion at ECF No. 2 and ECF No. 4; and TRO Order at ECF No. 11. At the conclusion of that hearing and in a subsequent writing, the Court ordered Defendant to immediately: (1) return the four computers, including the computer that Defendant claims is his personal computer; (2) provide to Plaintiff at least the $365,944.54 provided by Medicaid into his account; (3) provide to Plaintiff an accounting of other assets of Plaintiff's, including patient portals and any other financial, licensing and patient systems in Defendant's possession; and (4) provide to Plaintiff any additional funds that he has received or shall receive as a result of his interference with Plaintiff's business. ECF No. 11 at PageID ##: 104–05. Initially, the TRO order was to remain in effect until September 8, 2026, at 4:08 p.m. ET. ECF No. 11 at PageID #: 105.

The Preliminary Injunction hearing began on September 8, 2026, at 4:00 p.m., prior to the expiration of the TRO. ECF No. 12. By agreement of the Parties, that hearing was continued after Defendant made overtures to comply with the TRO.[6] Ultimately, the hearing was continued for fifteen days, so that, among other things, Defendant could retain counsel in advance of the resumed proceedings. The Preliminary Injunction hearing was scheduled to resume on September 23, 2026, at 11:00 a.m. ET. Also, by agreement of the Parties, the TRO was continued until the same date. The Parties were unable to attend the Preliminary Injunction

[6] During the initial Preliminary Injunction hearing, Defendant indicated that he was surrendering the four computers, as ordered by the TRO. That was untrue. Defendant only gave Plaintiff three computers and one computer monitor. *See* ECF No. 20 at PageID #: 245. Later, during the resumed preliminary injunction hearing, Defendant gave Plaintiff access to the fourth computer—the one identified as his personal computer.

hearing scheduled for September 23, 2026, at 11:00 am due to a conflicting Show Cause Hearing before the Magistrate Judge Carmen Henderson. ECF No. 27. By agreement of the Parties the Preliminary Injunction hearing was continued again and resumed on October 9, 2026, at 1:30 p.m. ET. The TRO was maintained in its entirety. ECF No. 28.

## II. Law and Analysis

The Sixth Circuit recently clarified the application of the traditional factors the Court should consider when resolving a motion for a Preliminary Injunction. The factors are: (1) plaintiff's likelihood of success on the merits; (2) the risk of irreparable harm to the plaintiff in the absence of an injunction; (3) the risk that an injunction will harm others; and (4) the broader public interest. *PCC Airfoils, LLC v. Daugherty*, 176 F.4th 509, 512¬13 (6th Cir. 2026) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

These factors operate as a "sliding-scale inquiry" rather than independent prerequisites, and no single factor is controlling. *PCC Airfoils, LLC*, 176 F.4th at 513. Nevertheless, likelihood of success on the merits and irreparable harm impose threshold limitations on the Court's discretion. If a plaintiff demonstrates "no likelihood of success on the merits," there is nothing left to balance, and injunctive relief must be denied regardless of the remaining factors. *Id*. (quoting *Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F. 4th 400, 409 (6th Cir. 2024)). Similarly, a court must deny injunctive relief when the plaintiff fails to demonstrate any risk of irreparable injury. *Id*. (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F. 2d 100, 105 (6th Cir. 1982)).

After balancing the factors, a court may grant injunctive relief only when the plaintiff makes a "clear showing" that is entitled to such relief. *Id*. (quoting *Winter*, 555 U.S. at 22). This standard does not require proof by clear and convincing evidence. *Id*. Even when a plaintiff

demonstrates likelihood of success on the merits and irreparable injury, the potential harm to others and the public interest may weigh against issuance of an injunction. *See Winter*, 555 U.S. at 32–33.

**a. *Likelihood of Success on the Merits***

Plaintiff is likely to succeed on the merits of its arguments. Primarily, the claims arise from Defendant's alleged possession and control of Medicaid and CareSource proceeds earmarked for Plaintiff and computers related to the finances and operation of Plaintiff's home health care business. ECF No 1. The record established so far makes a clear showing of the following.[7]

Plaintiff acquired its home health care business and entitlement to Medicaid and other payments and assets associated with the business from Defendant's wife, Rhonda. ECF No. 3 (Affidavit of Abraham Glanz); Prelim. Inj. Hrg. Pl. Ex. 1 (Asset Purchase Agreement). Notwithstanding the purchase, Medicaid and CareSource proceeds designated for Plaintiff continued to be deposited into an account[8] to which Plaintiff did not have access because Defendant had dominion and control over the account.[9] ECF No 1. Defendant denies this, claiming that he served solely as the billing representative, and that he did not exercise dominion and control over any funds or the disposition of such funds. ECF No. 13 at PageID #: 110. Defendant contradicted the above statement, however, during the Show Cause Hearing, he boasted that he was the "builder" of Plaintiff's business and another similar home health care

---

[7] As indicated during the Preliminary Injunction Hearing, the Court takes judicial notice of the Show Cause proceedings conducted by Magistrate Judge Henderson.

[8] After August 10, 2026, Plaintiff's started receiving funds from Medicaid.

[9] Plaintiff has described the account into which the Medicaid funds were directed as either Defendant's personal or retirement bank account.

company.[10] Defendant explained that, as the "builder", he helped construct the business by filing out the necessary paperwork and setting up business accounts. Defendant also admitted that he took money owed to Plaintiff. While he claims to have used those funds to pay debts, that he was able to access and dispense with Medicaid funds directed to Plaintiff shows that he had dominion and control over those funds. ECF No. 16 at PageID #: 213, ¶ 3. The Court is persuaded that Defendant had dominion and control over Plaintiff's assets, including Medicaid funds, to which he had no legitimate business interest.

Additionally, as a new owner, Plaintiff experienced a loss and risk of a loss of business, especially due to its loss of access to Medicaid funding. As a result, Plaintiff was forced to infuse personal funds to continue operating.[11] At this writing, Defendant has not regurgitated the Medicaid proceeds.[12] ECF No. 11. Defendant also removed or otherwise made inaccessible computers[13] that contained medical and financial records of patients and pertain to the operation of Plaintiff's home health care operation. Although, at this writing, Defendant has surrendered the computers and/or provided access to some operational information, he has not provided an

---

[10] Defendant claimed to have also built Rhonda House Home Healthcare Services ("Rhonda Services") and Rhonda House Home Healthcare LLC ("Rhonda LLC"). Rhonda Services was formed in 2025 and was subsequently sold to Plaintiff in 2026. ECF No. 13 at PageID #: 109. Rhonda LLC was formed in 2021 but was not sold to Plaintiff. *See Better Business Bureau, Rhonda's House Home Health Care, LLC*, https://www.bbb.org/us/oh/warren/profile/home-health-care/rhondas-house-home-health-care-llc-0432-20016965 (last visited Oct. 21, 202).

[11] Although Plaintiff's began receiving funds from Medicaid after August 10, 2026, this did not stop Plaintiff's need to infuse personal funds into the company.

[12] This disobedience has persisted despite the undersigned's Orders and the Show Cause proceedings.

[13] He argued that he did not return the computers even after the Court Order because, the computers were not included in any purchase agreement between Rhonda Bennett and Plaintiff; the computers removed were used for training purposes with American Red Cross; and because the fourth computer was his personal computer. ECF No. 13 at PageID #: 110; ECF No. 16 at PageID #: 213 ¶ 9.

accounting for or any other cogent explanation of the whereabouts of nearly one-half million dollars intended for Plaintiff.[14] *See* ECF No. 1 at PageID #: 3; ECF No. 3 at PageID #: 53 ¶¶ 22–23.[15]

Plaintiff has made a clear showing of a likelihood of success on the merits. The first factor, therefore, weighs in favor of Plaintiff's request for injunctive relief.

**b. *Irreparable Harm***

Plaintiff seeks two principal forms of relief: (1) an order preventing the continued transfer of Medicaid proceeds to Defendant; and (2) an accounting and return of computers and other assets[16] within Defendant's dominion and control.

Generally, an injury is not irreparable when it can be fully compensated through an award of monetary damages. *See* *Overstreet v. Lexington-Fayette Urban County Government*, 305 F. 3d 566, 578 (6th Cir. 2026) (finding that "[a] plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages.") (citation omitted). In this case, however, Plaintiff alleges more than that which can be solved with monetary damages. Plaintiff alleges that the payment of Medicaid funds into Defendant's personal account instead of to Plaintiff's business affects Plaintiff's reputation and goodwill. "The irreparable injury flows both from the potential difficulty of proof of plaintiff's damages, and also from the impairment of intangible values. . . . such as [Plaintiff's] reputation and goodwill." *Midwest*

---

[14] Prelim. Inj. Hrg. Pl. Ex. 8 shows that $445,962.96 is at issue and more likely than not in the possession of or under the control of Defendant.

[15] There is a related case pending in New York State courts. Filings made in that court also sustain Plaintiff's allegations regarding the misappropriation of the computers and their content. *Passion Care LLC v. Bennett*, 526984/2026 (Kings Sup. Ct.).

[16] These assets include patient portals (Medicaid, CareSource, Passport, and Legacy) and any other financial, licensing and patient systems in Defendant's possession.

*Guaranty Bank v. Guaranty Bank*, 270 F. Supp 2d 900, 923 (E.D. Mich. 2003) (citing *Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 608 (6th Cir. 1991) (citation omitted) (quotations omitted). Most of Plaintiff's patients are recipients of Medicaid and other resources, including CareSource. Plaintiff's home health aide business, reputation, and goodwill have been adversely affected because of Defendant's misappropriation of Medicaid and other funds designated for Plaintiff. Without these proceeds, Plaintiff's clients continue to lose access to the serious medical services that Plaintiff provides to its clientele in the community.[17] Because of Plaintiff's loss of access to necessary funds, Plaintiff has experienced a loss of business. Plaintiff has been required to transfer patients to other providers, constituting a loss of Plaintiff's reputation and goodwill as a Home Health Care provider.

Defendant relies on an unreported Sixth Circuit[18] case in support of his argument that irreparable harm has not been established for the Medicaid funds. ECF No. 13 at PageID #: 118. He contends that the Medicaid funds are purely monetary damages. ECF No. 13 at PageID #: 118. The Court is unpersuaded by this argument. Although Medicaid funds appear to be monetary, the irreparable harm caused by his nefarious misdirection negatively affects Plaintiff's goodwill and the reputation of Plaintiff's business, as mentioned above.

Plaintiff has also shown that Defendant removed computers from Plaintiff's business and continued to exercise control over at least one of them. Despite Plaintiff's requests and the TRO, Defendant did not return all of the computers until the second session of the Preliminary

---

[17] 42 CFR § 484.80(g)(3) provides the duties of a home health aide: "(i) The provision of hands-on personal care; (ii) The performance of simple procedures as an extension of therapy or nursing services; (iii) Assistance in ambulation or exercises; and (iv) Assistance in administering medication ordinarily self-administered."

[18] Defendant cites *Tascarella v. Aptiv U.S. Gen. Servs. P'ship*, No. 26-3101, 2026 WL 2243787, at *2–3 (6th Cir. 2026).

Injunction Hearing. ECF No. 15 at PageID ##: 207–11. Those computers were avenues of access to records that: (1) concern private medical and financial information of its patients, (2) are required for the operation of Plaintiff's business; and (3) access to the several portals like Medicaid, Passport, CareSource, and Legacy. The deprivation of access to patient medical and financial records, Medicaid, and portals that are needed to operate its Home Health Care business inflicts an injury that cannot readily be remedied through a later award of monetary damages. *Overstreet*, 305 F. 3d at 578. Ultimately, damages would be difficult to quantify because, among other things, the computers contain patient medical records, access to those records, and access to Medicaid, and various portals. *Id*. (finding an injury is not fully compensable by money damages, when the nature of the plaintiff's injury is such that damages would be difficult to calculate).

Plaintiff has made a clear showing of irreparable harm. This factor favors injunctive relief.

**c. *Harm to Others***

The third factor considers the risk that the requested Preliminary Injunction would cause substantial harm to others. There is no indication that requiring Defendant to preserve and return property earmarked for or belonging to Plaintiff would impose substantial or cognizable harm to Defendant. While Defendant argues that surrendering his personal computer would cause him harm, but he does not explain or provide any case law to support this contention. Without evidence of cognizable harm, Defendant's claim is unpersuasive.[19]

---

[19] Since making this argument, Defendant has provided access to his personal computer, without any resultant harm to himself, mooting that argument.

There is, however, clear showing of discernible harm to Plaintiff's patients who rely on resources like Medicaid to receive care from Plaintiff. As mentioned above, care for those patients has ceased or been transferred to other providers. Home Health Aides provide serious and meticulous care for the patients they serve in the community. Any interruption in the continuity of this care can be detrimental to the client. *See Int'l Res., v. N.Y. Life Ins. Co.*, 950 F.2d 294, 302 (6th Cir. 1991) (upholding a district court's finding that a loss of health insurance, which would "adversely [a]ffect the proper maintenance of [the plaintiff's] health," and "interruption of the care might cause irreversible physical harm," successfully established irreparable harm.).

Similarly, Defendant's possession of the computers containing private medical and financial information regarding Plaintiff's clientele unnecessarily exposes that private information. It also places the clients at risk due to Plaintiff or any other service provider lacking access to that important medical and financial information. Additionally, Plaintiff's inability to have access to Medicaid and the several other portals on which its business relies disrupted the continuation of care for Plaintiff's patients.

Plaintiff has clearly shown that failure to enjoin Defendant would harm others. This factor favors the injunctive relief sought by Plaintiff.

**d. *Public Interest***

The public has an interest in the continued and proper operation of health care facilities and in ensuring that health care providers have access to the records necessary to provide appropriate care for and assessment of their patients. The public also has a legitimate interest in trusting that the medical and financial records provided to its health care providers will be kept private. Plaintiff has made clear showing that the computers (and the records they contain or have access

to), absent intervention by the Court, would be unavailable to Plaintiff and at risk of inappropriate exposure, in violation of reasonable expectations of privacy and possibly privacy-related laws.[20] Moreover, Defendant's continued possession of the computers containing access to patient medical records and login credentials interferes with Plaintiff's ability to maintain home health care services and to access information necessary to serve its patients. Public interest favors preservation and return of those records, access, and equipment.

The public also has an interest in having business deals be carried out with integrity. The record developed so far paints Defendant as an interloper---someone without a legitimate right to the assets he has maintained control over or the business with which he has interfered.

The public interest factor weighs in favor of Plaintiff's request for injunctive relief.

## III. Conclusion

For the reasons set forth herein, on the record, and those that have been articulated in the Parties' briefs, Plaintiff's Motion for Preliminary Injunction is granted (ECF No. 2). Defendant's Motion to Dismiss, Emergency Motion to Dissolve, Vacate or Modify Temporary Restraining Order, and Motion for Status (ECF No. 13; ECF No. 14; and ECF No. 21) are denied as moot. Defendant's Motion for HIPAA Qualified Protective Order (ECF No. 31) is denied as premature and likely improvident because Defendant has not shown any right to access Plaintiff's HIPAA related information and the Court has not authorized any such discovery.

[20] In his motion for a protective order, Defendant states that "any access to client employee health information must comply with HIPPA privacy and security requirements governing protected health information, including safeguards against unauthorized use or disclosure." ECF No. 13 at PageID #: 116. Defendant's own argument leans in favor of the public interest factor.

To the extent not already done, Defendant is hereby Ordered to:

(1) return or provide access to the four computers, including the computer that Defendant claims is his personal computer;

(2) return funds, that is $445,962.96, that Medicaid and CareSource intended for Plaintiff but deposited into Defendant's personal account;

(3) provide an accounting of assets, that is an explanation of whether or how those assets were spent, owned by Plaintiff, including those derived from Medicaid, Passport, CareSource, and Legacy; and any other patient, financial, or licensing systems in Defendant's possession or control;

(4) provide any additional funds that Medicaid or CareSource disbursed or disburses to him that was intended for Plaintiff;

(5) cease interfering with the operations or finances of Plaintiff, including, but not limited to, accessing or modifying banking and financial accounts, Medicaid, CareSource, and other patient portals, and any other financial, licensing, and patient systems associated with Plaintiff.

IT IS SO ORDERED.

October 22, 2026
Date

*/s/ Benita Y. Pearson*
Benita Y. Pearson
United States District Judge